**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com

**THE SMITH LAW FIRM, PLLC**
R. ALLEN SMITH, Esq.*
300 Concourse Blvd., Suite 104
Ridgeland, MS 39157
Tel: (601) 952-1422
asmith@smith-law.org

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons, Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

**SHENAQ PC**
Amir Shenaq, Esq.*
3500 Lenox Rd. Ste 1500
Atlanta, GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

*Pro hac vice* forthcoming
*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jenny Houtchens and Samantha Ramirez, individually, and on behalf of those similarly situated,<br><br>                   Plaintiffs,<br><br>    v.<br><br>Google LLC,<br><br>                  Defendant. | CASE NO. 5:22-cv-02638-BLF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS, AND REQUEST FOR JUDICIAL NOTICE.**<br><br>Date: November 3, 2022<br>Time: 9:00 a.m.<br>Courtroom: 1<br>Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     GOOGLE'S STATEMENT OF FACTS OMITS AND MISLEADS AS TO
        DISPOSITIVE FACTS AND LANGUAGE. ...................................................... 1

III.    THE MOTION TO COMPEL ARBITRATION FAILS TO MEET ITS BURDEN. ........ 4

        A.      Google's Arguments To Compel Arbitration All Fail Because They Omit
                Facts, Dispositive Text Language, And Legal Standards. ...................... 4
        B.      Google Has Waived Arbitration And Its Injunction Arguments Lack Merit.......... 8

IV.     THE MOTION TO DISMISS FAILS TO MEET ITS BURDEN. ................................. 10

        A.      Google's Motion To Dismiss Omits Analysis Of Dozens Of Allegations
                That Satisfy Rule 9(b) And Establish Standing And All Elements Of All
                Claims. ............................................................................................... 10
        B.      Google's Remaining Arguments Lack Merit And Confirm That Google Is
                Unwilling To Address Head-On The Facts Dispositive To Its Motions............... 18

V.      THIS COURT SHOULD JUDICIALLY NOTICE GOOGLE'S DOCUMENTS
        BECAUSE OTHERWISE KEY FACTS WILL BE MISSING TO GOOGLE'S
        UNFAIR BENEFIT AND PLAINTIFFS' PREJUDICE. ................................... 18

VI.     PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE.................................... 19

VII.    CONCLUSION ......................................................................................... 19

1

# TABLE OF AUTHORITIES

2

## CASES

*Ashby v. Archstone Prop. Mgmt., Inc.*,

    *785 F.3d 1320 (9th Cir. 2015)* .................................................. 5

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) ................................................................ 11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,

    475 U.S. 643 (1986) ................................................................ 5

*Barrett v. Optimum Nutrition*,

    2022 WL 2035959 (C.D. Cal. Jan. 12, 2022) ......................... 19

*Beacon Theatres, Inc. v. Westover*,

    359 U.S. 500 (1959) ................................................................ 10

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,

    622 F.3d 996 (9th Cir. 2010) .................................................. 4

*Brown v. Hain Celestial Group, Inc.*,

    913 F.Supp.2d 881 (N.D. Cal. 2012) ...................................... 12

*Carvalho v. HP, Inc.*,

    No. 21-CV-08015-BLF, 2022 WL 2290595 (N.D. Cal. June 24, 2022) ............................ 17, 18

*Commonwealth v. Golden Gate Nat'l Senior Care, LLC*,

    194 A.3d 1010 (Pa. 2018) ...................................................... 17

*Cox v. Ocean View Hotel Corp.*,

    533 F.3d 1114 (9th Cir. 2008) ................................................ 9

*Garner v. Glob. Plasma Sols.*,

    2022 WL 742488 (D. Del. Mar. 10, 2022) ............................. 12

*Gregg v. Ameriprise Financial, Inc.*,

    245 A.3d 637 (Pa. 2021) ........................................................ 17

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Hardy v. Ole Mexican Foods, Inc.*,

    2022 WL 2906395 (W.D.N.Y. July 21, 2022).............................................................. 19

*In re Gilead Scis. Sec. Litig.*,

    536 F.3d 1049 (9th Cir. 2008)................................................................................... 11

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,

    298 F.Supp.3d 1285 (N.D. Cal. 2018) ............................................................. 2, 5, 6, 7

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,

    555 F.Supp.3d 829 (N.D. Cal. 2021) ........................................................................ 14

*Lam v. General Mills, Inc.*,

    859 F. Supp. 2d 1097 (N.D. Cal. 2012) .................................................................... 19

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,

    897 F.3d 88 (2d Cir. 2018)........................................................................................ 14

*Mayor of Baltimore v. Actelion Pharma. Ltd.*,

    995 F.3d 123 (4th Cir. 2021) .................................................................................... 14

*McGill v. Citibank, N.A.*,

    2 Cal. 5th 945 (2017) ................................................................................................. 9

*Miller v. Ghirardelli Chocolate Co.*,

    912 F.Supp.2d 861 (N.D. Cal. 2012) ....................................................................... 12

*Norcia v. Samsung Telecomms. Am., LLC*,

    845 F.3d 1279 (9th Cir. 2017)..................................................................................... 4

*Reese v. BP Exploration (Alaska) Inc.*,

    643 F.3d 681, 690 (9th Cir. 2011)............................................................................. 11

*Stover v. Experian Holdings, Inc.*,

    978 F.3d 1082 (9th Cir. 2020).................................................................................... 4

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,

    925 F.2d 1136 (9th Cir. 1991).................................................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003).................................................................................. 11

**RULES**

Fed. R. Civ. P. 8(d) ............................................................................................ 17

Fed. R. Civ. P. 12(b)(6) ................................................................................ passim

Fed. R. Civ. P. 56 ......................................................................................... 5, 17

Fed. R. Civ. P. 15 ........................................................................................ passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Google has filed two motions in one document. Both motions should be denied.

In its Motion to Compel Arbitration, Google fails to meet its burden for five reasons: (1) Google cannot establish an agreement because (2) Google's agreement language prevents any meeting of the minds; (3) this is evidenced by Google's position before this Court, which confirms no meeting of the minds could occur. As to these first three failures, Google (a) refuses to address its fatal language and separately (b) misuses the critical word "use" in its Krems' Declaration to mislead the Court about consumer access to the fatal language. Separately (4) under Google's own case law any agreement is (a) procedurally and (b) substantively unconscionable; and separately (5) Google's conduct establishes waiver of arbitration by Google's systematic pattern of conduct.

In its Motion to Dismiss, Google fails to meet its burden for five reasons: (1) Google omits any analysis of (a) dozens of well-pleaded allegations supported by (b) dozens of screenshots of admissible evidence, which omissions mislead this Court; (2) Google tells this Court only certain cherry-picked allegations were made, which further misleads this Court; (3) Google does not identify and establish any non-plausible, conclusory, or otherwise infirm allegations; (4) Google's arguments rely on *Google* receiving inferences, which violates the Rule 12(b)(6) legal standard; and (5) Google's arguments rely on Google being allowed to re-write the Complaint, thereby hijacking its content. Yet even with (4) and (5) Google cannot meet its Rule 12(b)(6) burden.

In total, Google makes over twenty-five arguments. All fail for the above core reasons. Google's specific arguments are rebutted below in the order that Google presented them.

## II.    GOOGLE'S STATEMENT OF FACTS OMITS AND MISLEADS AS TO DISPOSITIVE FACTS AND LANGUAGE.

Google's Fact Section (Section II.B) is misleading in three dispositive ways.

First, the Declaration information by Google's employee, Krems, blurs the key word "use." Krems tells this Court that *any* "use" of any kind *always* requires an account (which in turn

– 1 –

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GOOD GUSTAFSON**

requires acceptance of the putative arbitration language)—but a careful reading of the Krems Declaration at ¶¶ 4-8 confirms there are *two* ways a consumer can "use" a Fitbit, *not* just one. Krems and Google carefully conflate *data service* use with *physical* use: A consumer can charge the battery of, and wear, and be burned by, a Fitbit without ever opening an account—and without doing that, the consumer never knows an arbitration agreement might exist. Stated differently, consumer access to and notice of the putative arbitration agreement *only arises if* the consumer wishes to utilize *additional* features *after* purchasing the devices involved in this litigation, creates a Fitbit account, and journeys through thousands of words in those additional terms. *Compare* Plaintiff's Declaration of Ryan Gustafson at ¶¶ 3-17 and Exhibits A – I and K thereto *to* Google's Krems Declaration at ¶¶ 4-8. Google's representation to this Court that there is only one "use" that always requires a consumer to see the arbitration agreement is false. *Id.*

Second, Google's Fact Section (Section II.B) also misleads by omission: Google fails to be candid with this Court that nowhere *on* the box nor *in* the box is there (1) any arbitration language or (2) any reference to any arbitration language. The only legal language inside the box is placed at the bottom, below a hidden compartment, difficult to access and designed not to be seen. (Decl. of Ryan Gustafson at ¶¶ 12-17 and Exhibit K thereto). Thus, because (a) a consumer need not register for an account to use the product (*i.e.*, charge it, wear it, and get burned by it), and separately because (b) even if a consumer were to "dump[] out the contents of the box to retrieve the [product], there are several scenarios and reasons why he or she would" not "be confronted" with the putative arbitration agreement, *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F.Supp.3d 1285, 1299 (N.D. Cal. 2018). Google's Krems' statements in the Krems Declaration are not and cannot be accurate. There is no reason to look for it; the instructions appear first, at the top of the inside of the box, and those instructions contain no legal language nor any reference thereto. Decl. of Ryan Gustafson at ¶¶ 12-17 and Exhibit K.  These facts corroborate that a consumer can charge, wear, and be burned by a Fitbit device without any notice of or access

1

to Google's arbitration language.

2

Google's facts in Section II.C *are Google's own words and language*. Google's own words

3

are fatal to its motion. The analysis is as follows: One, Google tells this Court that Google's belief

4

is that its arbitration language covers ***"all disputes[.]"*** This is Google's own boldface and italics

5

representing to this Court Google's understanding of its own language. *See* Google Br. at p. 4 ln. 3

6

(emphasis in original). Two, just a few lines later, Google admits that its *actual* agreement

7

language (the only language consumers could possibly see and *only if* they opt for the data services

8

account *and* only if they actually review the terms of service at the time they create the data

9

services account) cannot, on its face, cover "all disputes": This is because, three, Google's actual

10

language tells consumers that Google's arbitration clause only "REQUIRES YOU TO

11

ARBITRATE ***CERTAIN*** DISPUTES[.]" This is Google's all-caps in its agreement. After

12

journeying through 3,659 words across 11 pages, it is the first indication to consumers of any

13

potential arbitration.  *See* Plaintiff's Declaration of Ryan Gustafson, ¶5. Again, consumers are only

14

notified of any potential arbitration *if* they sign up for the discretionary data, click the terms of

15

service URL at the signup page and make it to page 11. Even then, there are no other capital letters

16

modifying or negating the word "CERTAIN" in the agreement language. Google Br. at p. 4 ln. 13

17

(all-caps in original; additional emphasis added). Four, consequently, on its face, Google chose

18

arbitration language that is (a) antithetical to what Google believes (and represents to this Court):

19

"[A]ll disputes" cannot be reconciled with "CERTAIN DISPUTES"; and Google thus chose

20

arbitration language that precludes any meeting of the minds, because consumers are told and

21

understand one thing, while Google understands something entirely different.

22

Third, Google's facts and language in Section II.C are further misleading because they

23

suggest that no other relevant arbitration language exists. However, as discussed *infra* Section

24

IV.A, Google has placed additional language relevant to the arbitration issue in Google's separate

25

motion to dismiss. Plaintiffs analyze that buried language in their opposition to the motion to

26

27

28

dismiss, since that is where Google chose to place it. The language is Google's own and is incorporated herein.

Google's facts in Section II.C are further misleading. Google omits that its 14-page terms of service ("TOS") document focuses the consumer exclusively on privacy, information accuracy, software, data service, and intellectual property issues. *See* Google's Krems Declaration, Exhibit A, pp. 2-15. The *only* "at your own risk" warning to consumers addresses only *information accuracy. Id.* Google omits that a reasonable consumer would put two-and-two together—that since the 14-page TOS document is *only* about information and data, and that since the TOS says only "CERTAIN" things must be arbitrated—the arbitration language must mean that only information and software issues would go to arbitration. These facts further preclude any meeting of the minds based on Google's own facts placed before this Court for its motion. *See* additional analysis in Section III.A.

Finally, focusing on Google's facts, Sections II.D and E are not material. In contrast, it is the above facts from Google itself that are dispositive and fatal to Google's motion, given Google's burden.

## III.    THE MOTION TO COMPEL ARBITRATION FAILS TO MEET ITS BURDEN.

### A.    Google's Arguments To Compel Arbitration All Fail Because They Omit Facts, Dispositive Text Language, And Legal Standards.

First, concerning legal standards, Google simply omits law it dislikes. In seeking arbitration, Google bears the burden of proving the existence of an *agreement* by the preponderance of the evidence. *See, e.g., Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (emphasis added). There must be "*a meeting of the minds* between the parties." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (emphasis added). Stated differently, Google has "the burden to prove each element of a valid contract—including *mutual* assent." *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082 (9th Cir. 2020) (emphasis added).  Here, there is no mutual assent. *See* Declaration of Jenny Houtchens,

¶¶ 2-13 *and* Declaration of Samantha Ramirez, ¶¶ 2-13.

Second, the facts outlined above (Pages 1-4) show that Google fails under the above standard it attempts to sidestep. Google represents to this Court that it understands its language to mean "***all disputes.***" Google is unequivocal; Google itself uses the bold italics. But the same facts above (pages 1-4) show that a *consumer could only understand something different*, because the plain text says that only "CERTAIN" disputes go to arbitration. "CERTAIN" is Google's word choice; Google chose to capitalize it; now Google wants to rewrite it to "all." Google offers no law or argument to support this. It is Google's burden, but it does not attempt to establish a meeting of the minds and it ignores "CERTAIN."

Third, Google omits that "CERTAIN" is analytically relevant to *both* prongs of the two-step inquiry that governs Google's motion: (a) whether the arbitration agreement is valid; and (b) whether the agreement, if valid, encompasses the claims at issue. *See, e.g., In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F.Supp.3d 1285, 1289 (N.D. Cal. 2018) (citing *Ashby v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323* (9th Cir. 2015)). The question is not just whether there is an agreement generally, but whether a party agreed to arbitrate a particular type of dispute. *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Google omits any analysis of "CERTAIN" even though it is dispositive to both prongs.

Fourth, on a motion to compel arbitration, courts in the Ninth Circuit treat facts as if ruling on a motion for summary judgment under Fed. R. Civ. P. 56, construing all facts and reasonable inferences in favor of the non-moving party. *See, e.g., Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). In its brief, however, Google asks this Court to make adverse inferences against Plaintiffs, and to make inferences in favor of Google. Google is entitled to neither, particularly those it seeks to mask the existence of "CERTAIN." *Id.*; *see also In re Samsung Galaxy*, 298 F.Supp.3d at 1289.

Google omits all of these legal standards, which when applied to these facts are dispositive.

**GOOD GUSTAFSON**

Fifth, Google's argument at Section B.1 has the same errors previously discussed. Here, Google again misleads the court about "use" in relation to arbitration language. Plaintiffs have already rebutted Google's misleading Krems Declaration by providing the full facts, and a full context factual analysis. Yet in Section B.1 Google "doubles-down" on its misrepresentation about "use" by mischaracterizing the Complaint. *See, e.g.,* Complaint, ¶ 16. Google may not re-write Plaintiffs' pleading: A consumer can charge the battery, turn on, wear the device, and get burned without ever needing to complete the *data service* steps, and thereby without ever receiving notice of nor access to the putative arbitration language. *All* of Google's remaining arguments in Section B.1 are inapposite (because they presume the false fact that there is only one "use") and legally insufficient to carry Google's burden to establish (a) a valid contract by a meeting of the minds that (b) encompassed the claims here given the limiting word "CERTAIN." *See, e.g., In re Samsung Galaxy*, 298 F.Supp.3d at 1289.

Sixth, Google's argument in Section B.2 concerning unconscionability is — given Google's own cited case law — fatal to its motion. Were Google to acknowledge the facts it intentionally omits, the answer is simple. Applying *all* of the facts to the law, Google concedes that *procedural* unconscionability arises upon surprise. Google's Br. at 8. The undisputed facts present a clear case of surprise. Consumers are being surprised because:

(i) Google is deleting public information about the burns to keep consumers in the dark;

(ii) Google is refusing to warn consumers, either pre-purchase or post-purchase;

(iii) Google is selling a product for which consumers never have notice of, or access to, the associated arbitration clause (unless they get the added data service);

(iv) the TOS only covers information, IP, and privacy issues; and

(v) the plain text chosen by Google tells the consumer in all-caps that the agreement says only "CERTAIN" disputes are arbitrated. *See* Complaint ¶¶ 1, 3, 4, 28, 29, 32, 37, 41, 43, 44-46, 48, 49, 49a, 49b, 49c, 49d, 49e, 49f, 49g, 49h, 49j, and 49k—all of which Google

omits and does not analyze.

In totality, the above establishes both the fact *and* the reasonable inference of surprise under Google's own cited case law. *See* Google's Br. at 8-9 (citing case law and facts that *either* (i) a lack of *meaningful* opt-out *and/or* a lack of "clear" terms can constitute procedural unconscionability); *see also* Google's Br. at 9 (conceding procedural unconscionability even where agreement clearly seen on last page on comparatively short *seven*-page document); *compare* Google's Krems Decl. Exhibit A (Google's agreement is lost near the end of its twice-as-long *fourteen*-page agreement). Google's cases confirm procedural unconscionability by surprise exists on the undisputed facts before this Court.

Similarly, the facts and Google's own case law establish *substantive* unconscionability. Google concedes that one-sided agreements and/or oppressive terms are substantively unconscionable. (Google's Br. at p. 8). Here, Google's putative agreement is one-sided: Google claims it alone can change the meaning of the plain text; Google claims it *alone* can breach by avoiding arbitrations it doesn't want (*see* waiver analysis *infra* Section III.B); and yet Google contends that *consumers* should still be required to arbitrate "all" disputes despite (a) the asymmetry and (b) Google's own language clearly stating that only "CERTAIN" disputes need to be arbitrated. In its totality, all of this satisfies Google's own cited case law on pages 9-10 of its brief. Substantive unconscionability is thus also established on the undisputed facts. As Google concedes, when procedural and substantive unconscionability are established, no contract can exist.

Seventh, in Section B.3 Google finally addresses prong two of the above fundamental arbitration agreement analysis — whether, even if an agreement is valid, a party agreed to arbitrate a particular type of dispute. *See In re Samsung Galaxy*, 298 F.Supp.3d at 1289. In Google's Brief, Google's own case law concedes that arbitration *only* encompasses a dispute *if* the arbitration language *is clear and not ambiguous*. Google's Br. at p. 10, ln. 16-18. Here, as previously

GOOD GUSTAFSON

established, Google's own language in its TOS states that only "CERTAIN" disputes must be arbitrated. Google cannot survive its own standard with respect to its own limiting word "CERTAIN." As such, Google argues as a fallback that its incorporation of AAA rules requires that even threshold "encompassing" disputes go to arbitration. Google's argument is flawed. Its limiting word "CERTAIN" means on its face that *some disputes could never go to an arbitrator at all because the arbitrator could never have jurisdiction over them: A priori they fall outside arbitration and can never be brought within.* To the extent there is ambiguity about what disputes are heard before an arbitrator or the Court, given the limiting word "CERTAIN," that ambiguity should be resolved by the Court. The Court should resolve this case because the predicate that Google needs has not been established by Google as movant, and Google is entitled to no inference as movant, given the case law established at the start of this legal argument.

**B.      Google Has Waived Arbitration And Its Injunction Arguments Lack Merit.**

Eighth, Google declines to address the facts and law establishing that it has waived any arbitration agreement. The Complaint alleges with specificity, and Google does not dispute, the following paragraphs explaining the who, what, when, where, why, and how Google has been systematically breaching and waiving any putative agreement to arbitrate disputes. *See* Complaint ¶ 2 (instead of arbitrating, Google pre-emptively recalls defective products, precluding any ability for consumer arbitration and constituting breach of any alleged arbitration agreement); ¶¶ 37, 38 (instead of arbitrating, Google pre-emptively and unilaterally (i) makes false warranty expiration claims to terminate disputes, (ii) denies defects to terminate disputes, and (iii) pre-emptively and unilaterally tries to sell replacement products to the consumer to end disputes, all precluding any ability to arbitrate and constituting breach of any alleged arbitration agreement); and ¶ 39 (instead of arbitrating, Google pre-emptively (iv) directs its agents and employees to (v) actively delete consumers' free speech about their burn injuries). Google's motion does not explain why *Google itself* is taking these systematic steps (i)-(v), in a pattern, over years, *not* to arbitrate as pleaded in

GOOD GUSTAFSON

¶¶ 37-39. Google's motion does not dispute the pleaded fact allegations. Consequently, even if there were somehow a valid agreement based on a mutual understanding of the same thing and a meeting of the minds on the language, Google has long waived any such arbitration agreement. *See, e.g., Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9th Cir. 2008) ("'In determining [whether arbitration has been waived], a court can consider . . . whether the party's actions are inconsistent with the right to arbitrate[.]'") (quoting *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal.4th 1187 (internal quotations omitted). In total, Google's actions are inconsistent with the right to arbitrate.

Ninth, Google's arguments under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) are misguided. It is Google's burden to prove a meeting of the minds along with all the elements of a binding contract, and to rebut all established defenses. It is then Google's burden to establish the claims at issue are clearly and unambiguously within the agreement. The analysis thus far in this brief has established that Google, as movant, has failed to carry its burden for any of these elements. As such, it is incorrect for Google to suggest that Plaintiffs have the burden to plead and rely upon *McGill. See* Google's Br. at 11-12. Even if a *McGill* approach were required, the Complaint does plead with specific allegations several claims which primarily benefit the public. *See* Complaint ¶¶ 127-176 (Counts I-VI and Prayer For Relief ¶ E). Google's narrow reading of the complaint and the public relief it seeks again hijacks the pleading. Google also re-writes the legislative purpose behind the pleaded statutory causes of action. Google has not met its burden in somehow establishing that consumers getting physically burned in the context of the allegations here is somehow not a public issue. *See* Complaint ¶¶ 5-8, 10-11, 14, 35, 37, 39-40, 45, 47, 52, 66, 70, 73, 82-93, and 95-97, which is a non-exhaustive list of relevant well-pleaded allegations, supported by screenshots of admissible evidence satisfying Rule 9(b) particularity, all of which Google has ignored its brief. Nor has Google met its burden in establishing that injunctive relief that stops commercial distribution of a dangerous product that burns unsuspecting consumers is

somehow not a public issue for the public benefit. Finally, note that Google's Brief on page 13 concedes that two counts *do* satisfy *McGill*; under Google's own logic and analysis, this means that all of Plaintiffs' claims thus satisfy *McGill*.

Tenth, Google's request at Section C. to stay all non-arbitable claims is inappropriate. As established above, *all* of Plaintiffs' claims are not arbitable because they are all outside any agreement, even if Google could establish a meeting of the minds, which it cannot due to its own language. The argument presumes some claims must be arbitrated, but Google has not established this presumption. Google attempts to curtail constitutional rights yet it fails to meet the required threshold. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.") The deficiencies outlined herein lead to one conclusion: Google's Motion to Compel Arbitration should be denied and Plaintiffs' constitutional right to a jury trial shall remain intact.

## IV.    THE MOTION TO DISMISS FAILS TO MEET ITS BURDEN.

### A.    Google's Motion To Dismiss Omits Analysis Of Dozens Of Allegations That Satisfy Rule 9(b) And Establish Standing And All Elements Of All Claims.

First, as a threshold matter, Google has placed within its Motion to Dismiss facts that are fatal Google's Motion to Compel Arbitration. Google's Section A cites Google's own language in its own documents (Krems Decl., Exs. A and C) that confirms Google's putative arbitration language is limited to only "CERTAIN" claims and affirmatively allows consumers to file non-arbitration claims. *See* Google's Ex. A, ¶ 23 (Google's Br. at 15) ("Before *filing a claim* against Fitbit [you the consumer must email us] . . . . If a dispute is not resolved within 15 days . . . you or Fitbit *may bring a formal proceeding.*") (emphasis added). Google chose to use the words "claim" and "proceeding" without ever using the word "arbitration." This further causes Google's motion to compel arbitration to fail. Google had the burden to explain its language, how it could result in a

– 10 –

meeting of the minds, and how it encompassed all disputes. *Id.* Instead, Google has placed relevant language in a different motion, hiding it. *Id.* Google's Section A contains additional language by Google which establishes no meeting of the minds. *See* Google's Ex. C (Google's Br. at 15) (representing to this Court that Google's warranty and TOS do not discuss arbitration, but rather state that Google unilaterally gets to pick one of two remedies *without any arbitration opportunity* for consumers. Google's Br. at 15 and Exhibit C. Again, Google placed material language here, but omitted it in the prior motion. These additional facts that Google refused to tell this Court about in the motion to compel arbitration all reinforce the factual and legal conclusions that, on the face of the language as Google itself drafted it, it was impossible for there to be a meeting of the minds as to either prongs of the analysis set forth in *In re Samsung Galaxy,* 298 F.Supp.3d at 1289.

Second, Google's Section B omits relevant parts of the legal standards under Rule 12(b)(6) and Rule 9(b). As established below, these missing legal standards demonstrate that Google cannot meet its burden to establish actual deficiencies that could dismiss claims. A court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). Only allegations *established* by Google to be "merely conclusory, unwarranted deductions of fact, or unreasonable inferences" may be disregarded. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Non-fraud claims must be plausible, meaning they must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, fraud-based claims under Rule 9(b) must plead with particularity the "the who, what, when, where, and how" of the alleged fraudulent misconduct charged," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003), for notice. *Id.*

Third, Google's Section C concedes that Article III standing (as to all claims) and also economic harm standing (as to UCL-related claims) is satisfied for multiple reasons. First, Google omits that the Complaint pleads all required economic harms, including for economic

standing, with Rule 9(b) particularity at Complaint ¶¶ 17, 50-51, 79, 101, 104a, 104b, 104c, 104d, and 105-107. Second, where allegations about common deceptions and similar products are "the crux of [plaintiff's] case" involving a potential class action, plaintiffs have standing. *See, e.g., Brown v. Hain Celestial Group, Inc.*, 913 F.Supp.2d 881, 891 (N.D. Cal. 2012) (holding plaintiffs had standing in part because alleged common deceptions were the "crux" of plaintiffs' case). *See also Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861, 869 (N.D. Cal. 2012) (Beeler, J.) ("The majority of the courts . . . hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."); *Garner v. Glob. Plasma Sols.*, 2022 WL 742488, at *2 (D. Del. Mar. 10, 2022) (Bibas, J., sitting by designation) ("A plaintiff may have a clear injury from one product. His ability to represent others who bought different products depends on how similar the products and claims are[.] ... That is a certification problem, not a standing one."). The Complaint makes allegations about common deceptions and similar products which forms the substantive core of the Complaint. *See* Complaint at ¶¶ 1, 3-8, 10-11, 14, 28-29, 32, 35, 37, 39-41, 43-47, 48, 49, 49a, 49b, 49c, 49d, 49e, 49f, 49g, 49h, 49j, and 49k, 52, 66, 70, 73, 82-93, and 95-95. The fact allegations in these paragraphs, when applied to the law cited by both Google and Plaintiffs, establish that all claims survive: Standing exists because of well-pleaded allegations of (i) substantial similarity, (ii) Google's concessions regarding same, (iii) Google's conclusory arguments that omit dozens of paragraphs of the Complaint, and (iv) Google's attempts to manufacture dissimilarity (for example, by taking Complaint ¶ 59 so far out of context as to be misleading). In all of this, Plaintiffs have articulated, and Google has remained silent on, the core allegation of similarity which is exactly the same across every measure: Fitbit's charging and battery mechanisms are burning people's arms.

Fourth, Google's Section C argues lack of similarity, but again omits that the Complaint alleges the following well-pleaded facts sufficient to satisfy Rule 9(b) covering similarity as to (i)

GOOD GUSTAFSON

what products, (ii) when made, (iii) by whom made (iv) containing what component parts; (v) and who knew what when. All of these establish not just (a) substantial similarity as to products and defective parts but also (b) substantial similarity as marketed by Google, which, itself, declares *all* Fitbits to be *one single product "family."* All of the above is established in the allegations at Complaint ¶¶ 1, 3, 4, 28, 29, 32, 37, 41, 43, 44-46, 48, 49, 49a, 49b, 49c, 49d, 49e, 49f, 49g, 49h, 49j, and 49k. These particularized paragraphs in the Complaint—all directly responsive to similarity and all omitted or misrepresented by Google—cover not just the "who, what, when, where" for Rule 9(b), but also give Google further full notice because these paragraphs comprehensively—*with dozens of screenshots of admissible evidence on the face of the Complaint*—contain still more evidentiary specifics as to who, what, when, where, why, and how.

In Section C, Google offered illusory *marketing* "differences" (price points for income demographics, marketing bells and whistles, software (not device) features, etc.), but Google did not attempt to meet its burden by establishing lack of plausibility on the core allegations that the single Fitbit product "family" has a similar defective battery and charging mechanism that is burning people. Nor did Google attempt to meet its burden by establishing lack of plausibility and lack of Rule 9(b) particularity as to Google's misconduct being the same across the singular Fitbit "family." This includes Google both concealing the defect and actively directing its employees and agents to delete burn victim's free speech about the defect, to conceal it. Google may not satisfy its Rule 12(b)(6) burden merely by ignoring a substantial portion of the Complaint. Google ignores ¶¶ 1, 3, 4, 28, 29, 32, 37, 41, 43, 44-46, 48, 49, 49a, 49b, 49c, 49d, 49e, 49f, 49g, 49h, 49j, and 49k of the Complaint and fails to meet its burden. *See* Fed. R. Civ. P. 12(b)(6). Under its burden, Google must demonstrate, by analysis, actual objective deficiencies. It fails to do so. The Complaint has not only well-pleaded allegations, but screenshots with dozens of pieces of evidence to support those allegations. Where a movant chooses to ignore and omit, and choses to refuse to analyze, that movant cannot meet its burden under Rule 12(b)(6) and consequently claims

– 13 –

cannot be dismissed as a matter of law.

Fifth, still in Section C, Google asks for its first of several inferences *adverse to Plaintiffs and in favor of Google*, which is prohibited under Rule 12(b)(6) . Google, taking Complaint ¶ 33 out of context, seeks the inference that irrelevant *marketing* price points entitles Google to a factual conclusion that every single product is structurally and mechanically different in fundamental ways. *See* Google's Br. at 17. An inference for movant must be rejected as a matter of law; more fundamentally, all or parts of the allegations at Complaint ¶¶ 1, 3-8, 10-11, 14, 28-29, 32, 35, 37, 39-41, 43-47, 48, 49, 49a, 49b, 49c, 49d, 49e, 49f, 49g, 49h, 49j, and 49k, 52, 66, 70, 73, 82-93, and 95-95 factually refute and contradict Google's requested inference. Moreover, Google lacks legal authority to re-write or otherwise hijack the substantive content of Plaintiff's complaint.

Sixth, Google's second standing argument at Section C. (Google's Br. at 18) improperly conflates standing with class certification: A defendant's challenge of a multi-state consumer class action is properly raised at the Rule 23(b) stage, not as grounds for a Rule 12(b)(6) dismissal. *In re Xyrem (Sodium Oxybate) Antitrust Litig*., 555 F.Supp.3d 829, 888 (N.D. Cal. 2021) (Koh, J.) (noting that "[w]hether Class Plaintiffs are typical representatives of such individuals [from other states]—or whether these individuals together satisfy Rule 23(b)(3) predominance—is a question for class certification."); *accord Mayor of Baltimore v. Actelion Pharma. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 96 (2d Cir. 2018).

Seventh, in Section D, Google concedes there are more sections of language in its TOS that are fatal to its arbitration motion. On Page 18, Google reveals that consumers are free to bring _lawsuits_ against Google / Fitbit, along with two other non-arbitration actions: "*filing a claim against Fitbit*"; "*bring[ing] a formal proceeding*"; and/or "*bringing _suit_*." (Google's Br. at 18) (emphasis added). Google never told this Court about this language in its motion to compel

arbitration.

Eighth, in Section D, Google asks for its second improper inference. It asks this Court to infer a fact from the claimed product life of Fitbits, that four months cannot be the same as the words "shortly after" in Complaint ¶ 16. (Google Br. at 19). Again, Google may neither receive a favorable inference, nor prejudice non-movants through an inference, nor may Google re-write Plaintiff's complaint. More fundamentally, even if Google established the point, it would be insufficient as a matter of law to dismiss any claim. *Id.* Similarly, Google's arguments at pages 19 through 21 of its brief are, even if established, insufficient to dismiss claims at the Rule 12(b)(6) stage. Even then, because the desired dismissal of Claims I and IV would occur on choice of law grounds, not substantive grounds, leave to amend would be appropriate under Rule 15.

Ninth, in Section E, Google similarly fails to establish that the UCL, FAL, and CLRA claims should be dismissed. (Google Br. at 20). As to these, Google has not identified any infirm allegations in the Complaint that lack plausibility or that fail to satisfy Rule 9(b). In all or part, the allegations in Complaint ¶¶ 1, 3-8, 10-11, 14, 17, 28-29, 32, 35, 37, 39-41, 43-47, 48, 49, 49a, 49b, 49c, 49d, 49e, 49f, 49g, 49h, 49j, and 49k, 50-52, 66, 70, 73, 79, 82-93, 95-95, 101, 104a, 104b, 104c, 104d, and 105-107 satisfy the elements of these claims. Google omits discussion of all of these paragraphs, and their supporting evidentiary screenshots, as shown in the next paragraphs.

Tenth, in Section E, Google first asserts the Complaint fails to plead a duty to disclose. Google's own law concedes (Google's Br. at page 21) that a defendant has a duty to disclose where it has (a) exclusive knowledge (b) of material facts (c) not known to plaintiff *or* (d) actively conceals a material fact from the plaintiff. *Id.* The complaint pleads all of this with particularity, including *with dozens of screenshots of admissible evidence of who, what, when, where, why, and how*, each of which support the allegations with Rule 9(b) particularity. Specifically, the Complaint addresses the above duty to disclose requirements (a)-(d) in ¶¶ 5-8, 10-11, 14, 35, 37, 39-40, 45, 47, 52, 66, 70, 73, 82-93, and 95-97. These allegations establish who, what, when,

where, why, and how as to (i) knowledge of defect and danger in all products in Fitbit's single product "family" before sale; (ii) knowledge not just before sale but at time of sale; (iii) Google's intentional destruction of complaints prior to sale, to conceal; (iv) Google actively directing its agents and employees to delete free speech attempts to document burn injuries and economic injuries after sale; and that (v) Google in fact received (a) a high volume of complaints (b) via multiple different consumer and government paths, confirming (c) Google did receive them.

 The who, what, when, where, why, and how that is articulated in the above Complaint paragraphs (not just allegations but also screenshots of dozens of Google interactions with customers which are supporting admissible evidence that satisfy Rule 9(b)) are, on their own merits, allegations that are plausible, non-conclusory, fact-based, supported with admissible evidence, and thus legally sufficient at this stage of the case under Rule 12(b)(6) and *Iqbal*.

Eleventh, in Section E, for the same reasons as above, Google's reliance argument (Google's Br. at 24) is insufficient to dismiss claims. Here again, Google's own case law is fatal to its arguments: A plaintiff need only show that (a) had the omitted information been disclosed (b) a reasonable person would have been aware of it and (c) behaved differently. *Id*. Complaint ¶¶ 1, 6-11, 14, 39-40, 42, 45, 47-48, 66, 70, and 73 plead these with particularity again sufficient to satisfy Rule 9(b). Google omits these additional paragraphs as if they do not exist. (Google's Br. at 24). These allegations, like the others in the complaint, all or in part have supporting admissible evidence screenshots. Further, additional allegations and screenshot evidence indirectly supporting reliance, from which Plaintiffs as non-movants are entitled to a reasonable inference corroborating reliance, is additionally set forth at Complaint ¶¶ 5, 7-8, 10, 35, 37, 52, 82-93, and 95-97.

Twelfth, for the same reasons, Google's standing argument as to injunctive relief (Google's Br. at 25) is also insufficient to meet the burden to dismiss the claims. Here Google seeks its third impermissible inference in its own favor: The notion that consumers only purchase one Fitbit in their lifetimes. *Id*. The complaint pleads Rule 9(b) particularized allegations on this point that

**GOOD GUSTAFSON**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Google omits. It is Google's burden to establish infirmities, and Google may not seek inferences in lieu of that work, particularly where Google has elected to ignore allegations.

Thirteenth, also for the same reasons, Google's restitution and disgorgement argument (Google's Br. at 26) also fails to meet Google's burden because Google omits that Plaintiffs may plead in the alternative under Rule 8(d). Fed. R. Civ. P. 8(d). As such, Google's citation to *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) is inapposite. There, at the eve of trial, past the pleadings stage, Rule 8 did not apply. *Id.* at 837-38. Here, in contrast, it is not yet possible to know which if any claims will survive Rule 56, or provide any legal remedy; thus, pleading restitution and disgorgement in the alternative is proper at this procedural stage. "*Sonner* does not impose strict requirements at the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial." *Carvalho v. HP, Inc.*, No. 21-CV-08015-BLF, 2022 WL 2290595, at *7 (N.D. Cal. June 24, 2022).

Fourteenth, in Section F, Google concedes that its attempt to dismiss the Pennsylvania UTPCPL claim rises or falls on the issues of duty to disclose and reliance. (Google's Br. at 27). Plaintiffs already analyzed both of these on pages 14-16 and showed that Google has not met its burden on these issues. Google's UTPCPL argument also fails as it disregards Pennsylvania's legislative goals in enacting the UTPCPL. *See, e.g., Commonwealth v. Golden Gate Nat'l Senior Care, LLC*, 194 A.3d 1010, 1023 (Pa. 2018) (under the UTPCPL neither the intention to deceive nor actual deception must be proved; all that is required is "that the acts and practices *are capable of being interpreted in a misleading way.*") (emphasis added); *see also Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637, 649-50 (Pa. 2021) (UTPCPL establishes strict liability for vendors that engage in any conduct "which creates a likelihood of confusion or misunderstanding" regardless of the vendor's motive or intent because the Legislature has placed the duty of [UTPCPL] compliance squarely and solely on vendors[.]"). The Complaint Paragraphs cited *supra* on pages 14-16 satisfy the UTPCPL.

**GOOD GUSTAFSON**

### B. Google's Remaining Arguments Lack Merit And Confirm That Google Is Unwilling To Address Head-On The Facts Dispositive To Its Motions.

Fifteenth, in Sections G and H, Google continues to omit or mischaracterize the allegations in the Complaint. Google's Magnuson-Moss Warranty Act argument is insufficient to dismiss any claims (Google's Br. at 28) because Google omits that Plaintiffs' two warranty claims (Breach of Implied Warranty and Violation of the Magnuson-Moss Warranty Act) sound in breaches of implied warranties, not express warranties. *See* Complaint ¶¶ 177-207.Also, Google raises time limitation arguments, but Google omits the Complaint's well-pleaded allegations addressing time limitations issues. *See* Complaint ¶¶ 108-112. Additionally, Google then argues that unjust enrichment cannot be a claim, but ignores established law that "the Ninth Circuit has recognized that California law does indeed permit an independent claim for unjust enrichment." *Carvalho,* 2022 WL 2290595 at *6.

Just as in its motion to compel arbitration, in its motion to dismiss Google's briefing declines to address, head-on, the substance on which the motions turn. In its arbitration motion, Google declined to address its all-caps word "CERTAIN" and its legal consequences. Here, in its motion to dismiss, Google declined to address dozens of plausible allegations in the Complaint that in turn have dozens of screenshots of admissible evidence to support those allegations with particularity under Rule 9(b). Google cannot be said to have carried its burdens of proof where, in two motions, it elected to avoid all of the key facts and elected to avoid actual analysis of the key facts. Meanwhile, this brief has established that, on the merits, arbitration should not be compelled and no claim should be dismissed.

### V. THIS COURT SHOULD JUDICIALLY NOTICE GOOGLE'S DOCUMENTS BECAUSE OTHERWISE KEY FACTS WILL BE MISSING TO GOOGLE'S UNFAIR BENEFIT AND PLAINTIFFS' PREJUDICE.

Plaintiffs do not oppose Google's Request for Judicial Notice. As Plaintiffs have established, the documents for which Google seeks judicial notice (a) contain the full language that Google has tried to omit, change, and/or sidestep and (b) contain the actual facts about "use" that

– 18 –

Google has tried to blur and/or conceal. Google should be required to live by its own language and its own conduct as set forth in the Google Krems Declaration and its Exhibits.

## VI.   PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

In support of Plaintiffs' Opposition, Plaintiffs request that the Court take judicial notice of Exhibits A through K. Federal Rule of Evidence 201 requires judicial notice of facts "not subject to reasonable dispute" that are either (1) "generally known" or (2) "can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b), (c)(2). Among other things, a court may take judicial notice of product packaging, product labels, and other publicly available materials. *See,e.g., Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1100 (N.D. Cal. 2012) ("The Court takes judicial notice of the packaging…."); *Barrett v. Optimum Nutrition*, 2022 WL 2035959, at *1 (C.D. Cal. Jan. 12, 2022); *Hardy v. Ole Mexican Foods, Inc.*, 2022 WL 2906395, at *4 (W.D.N.Y. July 21, 2022). Exhibits A through K are all publicly available product packaging whose contents are not subject to reasonable dispute.

## VII.   CONCLUSION

Plaintiffs respectfully ask that the Court deny Google's Motion to Compel Arbitration and deny Google's Motion to Dismiss the Complaint. To the extent that the Court determines any claim is deficient, Plaintiffs respectfully request leave to amend pursuant to Fed. R. Civ. P. 15.


Dated: September 15, 2022

Respectfully submitted,


GOOD GUSTAFSON AUMAIS LLP
*/s/ J. Ryan Gustafson*
jrg@ggallp.com
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel.: (310) 274-4663

THE KEETON FIRM LLC
Steffan T. Keeton, Esq.*
stkeeton@keetonfirm.com
100 S Commons, Ste. 102
Pittsburgh, PA 15212
Tel.: (888) 412-5291

THE SMITH LAW FIRM, PLLC
R. Allen Smith, Esq.*
asmith@smith-law.org
300 Concourse Blvd., Suite 104
Ridgeland, MS 39157
Tel: (601) 952-1422

SHENAQ PC
Amir Shenaq, Esq.*
amir@shenaqpc.com
3500 Lenox Rd. Ste 1500
Atlanta, GA 30326
Tel: (888) 909-9993


*Pro hac vice forthcoming

Counsel for Plaintiffs and the Proposed Class

**GOOD GUSTAFSON**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September 2022, a true and correct copy of this Memorandum was filed with the Court via the Electronic Case Filing System, and was served on all counsel of record through the same means.

*/s/ J. Ryan Gustafson*

J. Ryan Gustafson, Esq.