UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNY HOUTCHENS, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>GOOGLE LLC,<br><br>   Defendant. | Case No. 22-cv-02638-BLF<br><br>**CORRECTED ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING CASE**<br><br>[Re: ECF No. 21] |

Plaintiffs Jenny Houtchens and Samantha Ramirez bring this action individually and on behalf of those similarly situated alleging that Defendant Google LLC ("Google") violated multiple states' consumer protection statutes, California's Business and Professions Code, California's Consumers Legal Remedies Act, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and The Magnuson-Moss Warranty Act. Plaintiffs also allege that Google breached implied warranties and has been unjustly enriched. This matter comes before the Court on Google's motion to compel arbitration and dismiss for lack of subject matter jurisdiction, or in the alternative, stay proceedings pending resolution of arbitration. *See* Mot. 6-14, ECF No. 21. Google also moves to dismiss for failure to state a claim. *Id.* 15-31. Defendants oppose. Opp'n, ECF No. 31. Plaintiffs filed a reply in support of their motion. Reply, ECF No. 40.

For the following reasons, the Court GRANTS the motion to compel arbitration and STAYS this action pending the outcome of the arbitration.

I. **BACKGROUND**

Fitbit manufactures smartwatches and activity trackers. Krems Decl. ¶ 2, ECF No. 21-1. Google acquired Fitbit in January 2021 and now manufactures, distributes, and sells Fitbit

1  products. Complaint ¶¶ 23-24, ECF No. 1.

2       To use certain features of a Fitbit smartwatch, a person must create a Fitbit account. *See*

3  Krems Decl. ¶ 4; Gustafson Decl. ¶¶ 3-6; Opp'n 2. The person can create a Fitbit account by

4  registering (1) online at Fitbit.com; (2) through the Fitbit desktop application or a similar

5  application; and (3) through the Fitbit mobile application. *Id.* ¶¶ 6-7. No matter which of these

6  methods the person uses to create an account, he or she will be presented with a blue hyperlink to

7  Fitbit's Terms of Service and will be required to check a box indicating that he or she "agree[s] to

8  the Fitbit Terms of Service." *Id.* ¶ 7.

9       Plaintiffs purchased Fitbit smartwatches and created Fitbit accounts. Houtchens purchased

10  a Fitbit Versa Light in December 2020. Houtchens Decl. ¶ 2, ECF No. 31-1. Shortly thereafter,

11  Houtchens created a Fitbit account for her daughter. *Id.* ¶ 5. Ramirez purchased a Fitbit Versa 2

12  in November 2021 and created a Fitbit account shortly after her purchase. Ramirez Dec. ¶¶ 2, 5,

13  ECF No 31-2. Neither Houtchens nor Ramirez recalls seeing any disclosure of Fitbit's Terms of

14  Service when creating her Fitbit account. *See* Houtchens Decl. ¶ 5; Ramirez Decl. ¶ 5. But since

15  at least December 2020 all users who signed up for a Fitbit account were required to agree to

16  Fitbit's Terms of Service during the sign-up process. *See* Krems Decl. ¶¶ 8-12.

17       Houtchens and Ramirez agreed to different versions of Fitbit's Terms of Service, *see id.*

18  ¶¶ 13-14, but the arbitration provisions within these two versions is substantively identical,

19  *compare* Krems Decl. Ex. A § 23 ("Current TOS"), ECF No. 21-3, *with* Krems Decl. Ex. B § 23

20  ("Former TOS"), ECF No. 21-4. It begins as folllows:

> PLEASE READ THE FOLLOWING SECTION CAREFULLY BECAUSE IT REQUIRES YOU TO ARBITRATE CERTAIN DISPUTES AND CLAIMS WITH US AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM US.
>
> You agree that any dispute between you and Fitbit arising out of or relating to these Terms of Service, the Fitbit Service, or any other Fitbit products or services (collectively, "Disputes") will be governed by the arbitration procedure outlined below.

Current TOS § 23; Former TOS § 23.

     The provision notes that the arbitration is governed by the American Arbitration

Associates ("AAA") Commercial Rules:

> Arbitration Procedures: The American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes. The arbitration will be held in the United States county where you live or work, San Francisco, California, or any other location we agree to.

Current TOS § 23; Former TOS § 23.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (internal quotations and citations omitted). The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing 9 U.S.C. § 3).

In deciding whether to compel arbitration, a district court determines two gateway issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where the parties clearly and unmistakably provide otherwise." *Id.* (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526 (2019). Incorporation of arbitration rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability. *Brennan*, 796 F.3d at 1130.

Parties cannot, however, delegate issues of formation to the arbitrator. *See Ahlstrom v.*

3

*DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021). "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state law principles that govern the formation of contracts.'" *Nguyen*, 763 F.3d at 1175 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that an agreement to arbitrate exists. *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

### III. DISCUSSION

Google contends that the arbitration provision in Fitbit's Terms of Service requires that the Court compel arbitration. Plaintiffs dispute Google's contention, arguing that they did not assent to the Terms of Service, the arbitration provision is unenforceable, and Google waived its right to compel arbitration. The Court addresses each argument in turn.

#### A. Formation of the Agreement

The Court must first determine whether the parties agreed to arbitrate. *See Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th at 635. Google argues that Plaintiffs agreed to arbitrate because they agreed to Fitbit's Terms of Service, Mot. 2-4 which contain the relevant arbitration provision, Krems Decl. ¶¶ 13-14. Plaintiffs admit that they created Fitbit accounts but dispute that they agreed to arbitrate the present dispute. Houtchens Decl. ¶ 5; Ramirez Decl. ¶ 5; Opp'n 4-10.

"Courts in the Ninth Circuit and other circuits acknowledge that mutual assent manifests when internet users accept 'clickwrap' agreements." *Adibzadeh v. Best Buy, Co. Inc.*, No. 20-CV-06257-JSW, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) (collecting cases). "A '*clickwrap*' agreement is one in which an internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 464 (2021).

The agreement at issue here is a clickwrap agreement. Google explains in a declaration that a person must "affirmatively check a box that indicates, 'I agree to the Fitbit Terms of Service'" when he or she creates a Fitbit account. Krems Decl. ¶ 7. Google confirms that this was the case when Plaintiffs created their Fitbit accounts. *Id.* ¶ 8-12 (describing the "sign-up flows" from December 2020 to present); Houtchens Decl. ¶ 5 (explaining that she created a Fitbit account

4

shortly after she bought Fitbit device in December 2020); Ramirez Decl. ¶ 5 (explaining that she created a Fitbit account shortly after she bought her Fitbit device in November 2021).

Plaintiffs dispute that they assented to Fitbit's Terms of service because: (1) they "do not believe [they] would have recognized" the hyperlinks to the Terms of Service (Houtchens Decl. ¶ 5; Ramirez Decl. ¶ 5); (2) they do not recall reading or agreeing to Fitbit's Terms of Service when they signed up for their Fitbit accounts (Houtchens Decl. ¶¶ 5, 7; Ramirez Decl. ¶¶ 5, 7); (3) they do not recall seeing Fitbit's Terms of Service or text concerning arbitration on or in their packaging (Opp'n 2; Houtchens Decl. ¶¶ 2-4, 6; Ramirez Decl. ¶¶ 2-4, 6); (4) the terms "CERTAIN" in the first sentence of the arbitration provision and "any" in the second renders the provision ambiguous and precludes mutual assent (Opp'n 3, 5); and (5) the Terms of Service "focus[] the consumer exclusively on privacy, information accuracy, software, data service, and intellectual property issues" (Opp'n 4). The Court finds none of Plaintiffs' arguments convincing and addresses each in turn.

The Court first addresses Plaintiffs' argument that they did not assent to the terms because they "do not believe [they] would have recognized" the hyperlinks to the Terms of Service when signing up for their Fitbit accounts. *See* Houtchens Decl. ¶ 5; Ramirez Decl. ¶ 5. Google declares that a person would have been presented with a screen that is "substantially similar" to one of the following screens when creating his or her Fitbit account—depending on whether the person created his or her account through a website, desktop application, or mobile application:



(Fitbit.com)



MacOSX



Fitbit Mobile Application

Windows

Krems Decl. ¶ 8.

      The Court finds that the hyperlinks to Fitbit's Terms of Service in each of the above screens provided Plaintiffs "reasonably conspicuous notice" of the terms.  *See Berman v. Freedom*

United States District Court
Northern District of California

*Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). In the first three screens, the hyperlinks to Fitbit's Terms of Service are presented in blue text in a sentence that otherwise uses gray text; they are next to the box a user must select to accept the terms; and the screens on which they appear are uncluttered. Court's have routinely found that such a presentation supplies reasonably conspicuous notice of hyperlinked terms. *See, e.g.*, *Adibzadeh*, 2021 WL 4440313, at *6 (reasonably conspicuous notice provided "where users must agree to the website's terms and conditions before they can proceed, and the terms and conditions are offset in a blue text, hyperlinked text"). In the final screen, the hyperlinks are again presented next to the box that a user must select to accept the terms and the screen on which they appear is uncluttered; but instead of using blue font to distinguish the hyperlinks from the surrounding text, the page uses bold-underlined font. The Court finds that this page, too, provides reasonably conspicuous notice of the terms to which a consumer will be bound. *Cf. Nguyen*, 763 F.3d at 1177 ("The conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement.")

The Court next turns to Plaintiffs' arguments that they do not recall reading or agreeing to Fitbit's Terms of Service when they signed up for their Fitbit accounts. *See* Houtchens Decl. ¶¶ 5, 7; Ramirez Decl. ¶¶ 5, 7. As noted above, Google has offered evidence that Plaintiffs checked a box agreeing to Fitbit's Terms of Service when they created their Fitbit accounts. *See* Krems Decl. ¶¶ 4-12. Plaintiffs' bare assertion that they do not recall this process does not overcome overcome Google's evidence. *See Crawford v. Beachbody, LLC*, No. 14CV1583-GPC KSC, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) (plaintiff assented to Terms of Service through hybrid clickwrap/browsewrap agreement even though she did "not recall seeing or agreeing to any terms and conditions on the . . . website"). Likewise, Plaintiffs' assertion that they may not have read the Terms of Service does not undermine their assent to the terms. *See, e.g.*, *Molina v. Scandinavian Designs, Inc.*, No. 13-CV-04256 NC, 2014 WL 1615177, at *3 (N.D. Cal. Apr. 21, 2014) ("[O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it." (quoting

8

*Randas v. YMCA of Metro. L.A.,* 17 Cal. App. 4th 158, 163 (1993))).  Accordingly, the Court finds that Plaintiffs' failure to recall reading or agreeing to Fitbit's Terms of Service does not undermine their assent.

The Court next addresses Plaintiffs' argument that they did not assent to Fitbit's Terms of Service because the Terms were not in or on the packaging of their Fitbit devices.  *See* Opp'n 2; Houtchens Decl. ¶¶ 2-4, 6; Ramirez Decl. ¶¶ 2-4, 6.  As discussed above, Plaintiffs were on inquiry notice of Fitbit's Terms of Service due to the clickwrap agreement to which they assented when they created their Fitbit accounts.  Fitbit's alleged failure to include the Terms of Service or reference to the Terms of Service in the packaging of its devices does not negate this notice.

The Court addresses Plaintiffs' argument that the terms "CERTAIN" in the first sentence of the arbitration provision and "any" in the second renders the provision ambiguous and precludes mutual assent (Opp'n 3, 5).  As noted above, the agreement reads as follows:

> PLEASE READ THE FOLLOWING SECTION CAREFULLY BECAUSE IT REQUIRES YOU TO ARBITRATE CERTAIN DISPUTES AND CLAIMS WITH US AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM US.
>
> You agree that any dispute between you and Fitbit arising out of or relating to these Terms of Service, the Fitbit Service, or any other Fitbit products or services (collectively, "Disputes") will be governed by the arbitration procedure outlined below.

Current TOS § 23; Former TOS § 23.  The first sentence, advises that the party to the agreement should read the following section because it requires him or her to arbitrate "certain" disputes.  The next sentence explains which disputes those are:  "any dispute between [the party] and Fitbit arising out of or relating to these Terms of Service, the Fitbit Service, or any other Fitbit products or services."  The Court finds no ambiguity here arising from the use of the term "certain" in the first sentence "any" in the second sentence.  The Court therefore declines to find a lack of mutual assent on this basis.

Finally, the Court addresses Plaintiffs' argument that the Terms of Service "focus[] the consumer exclusively on privacy, information accuracy, software, data service, and intellectual property issues."  *See* Opp'n 4.  Plaintiffs state that because "the only 'at your own risk' warning to consumers addresses only information accuracy" and because the arbitration provision says

9

certain provisions are subject to arbitration "the arbitration language must mean that only information and software issues would go to arbitration." *Id.* Plaintiffs flatly assert "these facts . . . preclude any meeting of the minds." *Id.*

The Court disagrees. As an initial matter, Plaintiffs are wrong that "at your own risk" concerns only "information accuracy." Section 11 of the Terms of Service uses the phrase "at your own risk" to warn users about engaging in exercise programs they learn through the Fitbit Service. Current TOS § 11; Former TOS § 11. More important, though Plaintiffs use the phrase "meeting of the minds," their argument is one of scope. They contend that the Terms of Service "focus[] the consumer exclusively on privacy, information accuracy, software, data service, and intellectual property issues." Opp'n 4. Plaintiffs suggest that the current dispute falls outside of the scope of disputes governed by the agreement because in their view it does not concern "information accuracy." But questions of the arbitration provision's scope have been delegated to the arbitrator through its incorporation of the AAA rules. *See Ramirez v. Electronic Arts, Inc.*, No. 20-CV-05672-BLF, 2021 WL 843184, at *4 (N.D. Cal. Mar. 5, 2021); *see also Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017). Accordingly, the Court finds that the "at your own risk" language in the Terms of Service does not overcome Google's showing that Plaintiffs assented to the Terms of Service.

In light of the foregoing, the Court finds that the parties agreed to arbitrate.

### B. Enforceability of Arbitration Provision

#### 1. Unconscionability

The Court next addresses whether the arbitration provision in Fitbit's Terms of Service is unenforceable due to unconscionability. "Under California law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable." *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007). Plaintiffs contend that the provision is procedurally unconscionable because "[t]he undisputed facts of this case present a clear case of surprise." Opp'n 6. Plaintiffs contend that the provision is substantively unconscionable because "the putative agreement is one-sided." Opp'n 7. The Court finds neither argument convincing and addresses each in turn.

The Court starts with procedural unconscionability. "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).

Google notes and Plaintiffs do not dispute that the arbitration provision provides parties agreeing to the Terms of Service the opportunity to opt out. The Ninth Circuit has explained that "[t]he threshold inquiry in California's unconscionability analysis is 'whether the arbitration agreement is adhesive.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000))). It has further explained that "an arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Id.* (citing *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002)). Here, the arbitration provision states: "You can decline this agreement to arbitrate by contacting **optout@fitbit.com** within 30 days of first accepting these Terms of Service and stating that you (include your first and last name) decline this arbitration." Current TOS § 23; Former TOS § 23. Plaintiffs do not contend that this language denies parties a meaningful opportunity to opt out of arbitration. Accordingly, the Court finds that arbitration provision is not procedurally unconscionable.

Because the provision is not procedurally unconscionable, and because both procedural and substantive unconscionability must be present for an agreement to be unenforceable, the Court does not reach the question whether the provision was substantively unconscionable. *Mohamed v. Uber Techs., Inc.*, 848 F.3d at 1211. The Court finds that the arbitration provision is not unenforceable due to unconscionability.

### 2. *McGill* Rule

In *McGill v. Citibank, N.A.*, the California Supreme Court held that contracts that waive a party's right to seek public in junctive relief are unenforceable under California law. 2 Cal. 5th 945, 963 (2017). Google argues that *McGill* does not preclude this Court from compelling arbitration because (1) the applicability of *McGill* is delegated to an arbitrator where, as here, the

arbitration agreement incorporates AAA rules; and (2) the Complaint does not seek injunctive relief that would primarily benefit the public. Mot. 11-13. Plaintiffs respond that its claims "satisfy *McGill*" because "consumers getting physically burned" is "a public issue" and "injunctive relief that stops commercial distribution of a dangerous product that burns unsuspecting consumers is . . . a public issue for the public benefit." Opp'n 9-10.

The Court finds that the arbitration provision at issue here delegates to the arbitrator the issue of whether the provision is unenforceable under *McGill*. As noted above, the arbitration provision in Fitbit's Terms of Service incorporate AAA's Consumer Arbitration Rules. Current TOS § 23; Former TOS § 23. Courts in this District have held that parties to an arbitration agreement delegate issues regarding the validity of the agreement to the arbitrator when the agreement incorporates the AAA rules. *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017); *Ramirez*, 2021 WL 843184, at *4. Courts in this District have also held that the issue of whether an arbitration provision is unenforceable under *McGill* is a matter regarding the validity of the arbitration provision and therefore delegated to the arbitrator to decide. *See Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1176-77 (N.D. Cal. 2021) (collecting cases); *Ramirez*, 2021 WL 843184, at *4. Accordingly, the Court declines to determine whether the arbitration provision at issue here is invalid under *McGill*, as the parties have delegated determination of that issue to the arbitrator.

### C. Waiver of Right to Arbitrate

The Court finally addresses whether Google has waived its right to arbitrate. Plaintiffs argue that Google has waived its right to arbitrate because Google "pre-emptively recalls defective products," "makes false warranty expiration claims to terminate disputes," "denies defects to terminate disputes," "tries to sell replacement products to the consumer to end disputes," and "delete[s] consumers' free speech about their burn injuries." Opp'n 8. Google responds that it has not waived its right to arbitrate, as it has filed its motion to arbitrate at the earliest possible opportunity. Google further notes that Plaintiffs' arguments that Google waived its right to arbitrate due to conduct outside of the litigation are not based in law and do not concern any behavior between Google and Plaintiffs themselves.

In determining whether a party has waived its right to arbitrate, a court may consider the following factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9th Cir. 2008) (citing *St. Agnes Med. Ctr. v. PacifiCare of Cal.,* 31 Cal. 4th 1187, 1196 (2003)). "Waiver is proper where the 'litigation machinery' has 'been substantially invoked' before a party has moved to compel arbitration." *Reynoso v. Bayside Mgmt. Co., LLC*, No. 13-CV-4091 YGR, 2013 WL 6173765, at *6 (N.D. Cal. Nov. 25, 2013) (quoting *Lounge–A–Round v. GCM Mills, Inc.,* 109 Cal. App. 3d 190 (1980)).

The Court finds that Google has not waived its right to arbitrate Plaintiffs' claims. As for the first *Cox* factor, the Ninth Circuit has explained that "[t]here is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Plaintiffs have not identified, and the Court is unaware of any cases where, as here, a court has found that a party has engaged in acts inconsistent with its right to arbitrate based on actions it took toward persons or entities that are not parties to the dispute. The Court declines to do so here.

The second through fifth *Cox* factors further weigh in favor of finding that Google has not waived its right to arbitrate. In *Cox*, the court explained that "all of factors (2) through (5), which have to do with the invocation of 'the litigation machinery' and its use, militate in favor of [the party seeking to compel arbitration] because [that party] did not resort to litigation itself and acted to invoke arbitration immediately upon learning that [the opposing party] had instituted litigation." *Cox*, 533 F.3d at 1126. Here, like in *Cox*, the party seeking to compel arbitration did not resort to litigation itself and sought to invoke arbitration very soon after Plaintiffs filed this lawsuit.

Finally, the sixth *Cox* factor—prejudice to the party opposing the motion to compel

13

1  arbitration arising from movant's delay—further favors that Google has not waived its right to
2  compel arbitration. Here, there is little to no prejudice to Plaintiffs, as Google moved to compel
3  arbitration in its first substantive motion, shortly after Plaintiffs filed their suit. *See id.*
4  Accordingly, the Court finds that Google has not waived its right to compel arbitration.

### D.  Dismissal of Claims

Google requests that the Court dismiss Plaintiffs' claims upon a finding that they are arbitrable. Mot. 14-15. In the Ninth Circuit, courts have discretion to stay or dismiss claims subject to a valid arbitration agreement. *Price v. Petaluma Health Ctr.*, No. 17-CV-05428-HSG, 2019 WL 402314, at *2 (N.D. Cal. Jan. 31, 2019) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). However, the court should exercise this discretion after "the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).

Plaintiffs dispute whether their claims fall within the arbitration provision and whether the arbitration provision is enforceable. Because it is not certain that Plaintiffs' claims will remain in arbitration, outright dismissal is not appropriate, and the Court stays this action pending the completion of arbitration.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Google's Motion to Compel Arbitration is GRANTED, and the case is STAYED pending the outcome of the arbitration. The Parties must provide this Court with their status on the initiation of arbitration within 60 days of this Order, and thereafter within 10 days of the conclusion of arbitration. Accordingly, Google's Motion to Dismiss submitted in the same filing as its Motion to Compel Arbitration is TERMINATED. If the case is returned to this Court, Google may re-notice its Motion to Dismiss.

Dated: January 6, 2023

_____
BETH LABSON FREEMAN
United States District Judge